IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| SHANNON L. PATRICK, | ) | CIVIL NO. 13-00638 JMS/KSC |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING IN PART AND |
| | ) | DENYING IN PART DEFENDANTS' |
| vs. | ) | MOTIONS FOR PARTIAL |
| | ) | DISMISSAL, AND FOR SUMMARY |
| 3D HOLDINGS, LLC, dba KAUAI | ) | JUDGMENT, DOC. NOS. 5 & 13 |
| ATHLETIC CLUB; et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS FOR PARTIAL DISMISSAL, AND FOR
SUMMARY JUDGMENT, DOC. NOS. 5 & 13**

**I.  INTRODUCTION**

In this sexual harassment and employment discrimination action,

Plaintiff Shannon Patrick ("Plaintiff" or "Patrick") alleges that she was sexually

assaulted and harassed by a co-worker while both were working at Kauai Athletic

Club ("KAC"), a fitness center located on Kauai. *See* Doc. No. 1, Compl. ¶ 13.

Patrick further alleges that, after she reported the incident to her supervisor, she

was terminated and not re-hired in retaliation for such reporting. *Id.* ¶¶ 14, 43.

Accordingly, Patrick filed this action on November 21, 2013, alleging numerous

state and federal claims against Defendants 3D Holdings LLC ("3DH") and Good

to Go Living, Inc. ("GTGL") (both allegedly doing business as KAC); and Ken

Maurice Lardizabal ("Lardizabal"), after exhausting administrative remedies

before the Hawaii Civil Rights Commission ("HCRC") and/or the Equal

Employment Opportunity Commission ("EEOC"). *See id.* ¶¶ 8, 9.

Currently before the court is (1) 3DH's Motion for Partial Dismissal,

filed December 30, 2013, Doc. No. 5 (joined by GTGL, Doc. No. 16); and

(2) GTGL's Motion for Summary Judgment, filed on January 27, 2014, Doc. No.

13.  Based on the following, the court GRANTS Defendants' Motions in part and

DENIES them in part.

## II. **BACKGROUND**

### A.    **Factual Background**

The court assumes the Complaint's well-pleaded factual allegations

are true for purposes of 3DH's Motion for Partial Dismissal brought under Federal

Rule of Civil Procedure 12(b)(6).  *See, e.g.*, *Moss v. U.S. Secret Serv.*, 572 F.3d

962, 970 (9th Cir. 2009).  And in considering GTGL's Motion for Summary

Judgment under Federal Rule of Civil Procedure 56, the court views the evidence

in the light most favorable to Plaintiff, the non-moving party.  *See, e.g.*, *Sullivan v.*

*Oracle Corp.*, 662 F.3d 1265, 1270 (9th Cir. 2011).  Applying those standards, the

court sets forth the following factual background.

2

### 1.    The December 19, 2011 Incident at KAC

Patrick began working at KAC in 2004, and left in 2005.  Doc. No. 14, GTGL's Concise Statement of Facts ("CSF") ¶ 3; Doc. No. 24, Pl.'s CSF ¶ 1.[1] The Complaint alleges that KAC was, at all relevant times, "owned, operated, and/or maintained by 3DH and or/GTGL," Doc. No. 1, Compl. ¶ 10, although evidence now indicates that KAC *changed* ownership -- apparently from 3DH to GTGL -- precisely during relevant time periods, as discussed further below.  *See* Doc. No. 14-3, GTGL Ex. A (Dec. 28, 2011 Asset Purchase Agreement between KAC, LLC and GTGL).[2]  In 2009, 3DH re-hired Patrick as a front desk representative and clerk at KAC.  Doc. No. 24, Pl.'s CSF ¶ 3.  In December 2011, Lardizabal started working as a part-time employee at KAC.  *Id.* ¶ 5.  At that time, KAC employed four full-time employees (including Patrick) and "numerous" part-time employees such as Lardizabal.  *Id.* ¶¶ 7, 29; Doc. No. 24-1, Pl.'s Decl. ¶ 35.

---

[1]  Where a fact is not in dispute, the court cites directly to the corresponding CSF. Otherwise, the court cites to the non-moving party's (Plaintiff's) evidence, construed in the light most favorable to Plaintiff.

[2]  The precise relationship between KAC and 3DH is unclear.  The Complaint indicates both that 3DH owns (or owned) KAC, and that 3DH was "doing business as" KAC.  Doc. No. 1, Compl. ¶¶ 2, 10.  Evidence indicates that KAC is also a trade name previously owned by 3DH. *See* Doc. No. 14-7, GTGL Ex. E.  There is, however, some indication that KAC, LLC (a non-party) was the actual owner of KAC.  *See* Doc. No. 14-3, GTGL Ex. A.  For purposes of these Motions, however, the court accepts as true the allegation that 3DH was doing business as KAC, and that 3DH was Plaintiff's employer at relevant periods.  (3DH's Motion has not argued that Plaintiff has named the wrong corporate entity for relevant events, and the court does not suggest otherwise.)

KAC had a program that provided free club memberships to people if they agreed to work at least two part-time shifts per week. Many of the club members took advantage of this program, including Lardizabal. Doc. No. 24, Pl.'s CSF ¶ 7.

On December 19, 2011, Patrick was working at the front desk area of KAC. Doc. No. 24-1, Pl.'s Decl. ¶ 13. Lardizabal came to work late, appearing to be intoxicated. *Id.* ¶ 14. Lardizabal is over six feet tall, weighs over 200 pounds, and is a former power lifter and mixed martial arts fighter. *Id.* ¶ 15. Patrick was at the front desk, when Lardizabal "repeatedly came up from behind, and pinned [Patrick] against the counter." *Id.* ¶ 18. Patrick attests that Lardizabal alternately reached into her clothes, and groped her buttocks, breasts, and digitally penetrated her vagina. *Id.* Patrick attempted to resist, but could not get Lardizabal off -- he did not stop until the new staff started coming for the next work shift. *Id.* ¶¶ 19-20.[3]

On December 21, 2011, Patrick reported the incident by email to her immediate supervisor, KAC general manager Phyllis Stanwood ("Stanwood"), and asked for a meeting. Doc. No. 14, GTGL CSF ¶ 7; Doc. No. 24-1, Pl.'s Decl. ¶¶ 8,

---

[3] The court takes judicial notice that, according to the Hawaii Judiciary's "Ho'ohiki" public docket, Lardizabal was indicted on January 26, 2012 for eleven counts of sexual assault under Hawaii Revised Statutes ("HRS") § 707-733. *See State v. Lardizabal*, No. 5PC12-1-000049 (Haw. Cir. Ct.), http://hoohiki2.courts.state.hi.us/jud/Hoohiki/JSAPM52F3.jsp (last visited March 18, 2014).

24.  On December 22, 2011, after a brief meeting with Patrick in Stanwood's car, Stanwood placed Patrick on a paid leave of absence.  Doc. No. 24-1, Pl.'s Decl. ¶ 28.  Stanwood said that the leave was authorized by "the owner of KAC, David Carswell," *id*., who "was aware of [her] complaint of the sexual assault and the trauma and stress [she] was going through." *Id*. ¶ 29.  Stanwood, however, did not conduct an investigation of the sexual assault incident, *id*. ¶ 30, and "became increasingly negative and hostile" with Patrick.  *Id.* ¶¶ 31, 38.  "Stanwood discouraged [Patrick] from returning to work and tried to get rid of [her], because of [her] complaint of the sexual assault." *Id.* ¶ 43.

## 2.     The Transfer of Ownership of KAC

Meanwhile, plans were underway to sell KAC to GTGL.  On December 22, 2011, Stanwood emailed KAC staff announcing a mandatory staff meeting on December 28, 2011.  *Id*. ¶ 32.  Patrick notified Stanwood that she planned to attend the meeting, but Stanwood instructed her not to attend.  *Id*. ¶ 39.  On December 29, 2011, Stanwood sent an email to all KAC employees announcing the sale of KAC to GTGL.[4]  *Id.* ¶ 33.  Employees were notified that they would

---

[4]  On December 28, 2011, "Kauai Athletic Club, LLC" and GTGL entered into an Asset Purchase Agreement for the sale of KAC to GTGL.  Doc. No. 14, GTGL CSF ¶ 15.  The sale closed on February 1, 2012.  *Id.* ¶ 16.  The seller represented that "there were no suits, actions, or legal . . . proceedings . . . pending . . . or threatened against Seller or any other party which might affect the operation of the Business."  Doc. No. 14-3, GTGL Ex. A ¶ 5.4.  And the Agreement

(continued...)

continue as "employees of 3D Holdings dba [KAC]" and that Stanwood would "remain as General Manager for the month of January [2012]."  Doc. No. 24-3, Pl.'s Ex. 2 at 2.  Stanwood's notice stated that "all employees will be released effective January 31[, 2012] and will have the opportunity to re-apply for new functions and positions."  *Id.*  She told them that "[c]urrent KAC employees will be given first access to the job postings[.]"  *Id.*  Stanwood "was in charge of transitioning the employees and the entire club operation from KAC to GTGL," Doc. No. 24-1, Pl.'s Decl. ¶ 37, and remained as KAC's general manager after the sale to GTGL.  *Id.* ¶ 36; Doc. No. 24-4, Pl.'s Ex. 3.

Patrick attests that "Stanwood let all KAC employees submit their employment applications to reapply with GTGL, except [her]."  Doc. No. 24-1, Patrick Decl. ¶ 46.  "[Stanwood] discouraged [Patrick] from submitting [her] application," *id.* ¶ 47, and "kept refusing [her] application until [Patrick] insisted [her] application be accepted via hand-delivery on January 23, 2012."  *Id.* ¶ 49; Doc. No. 25, Pl.'s Suppl. Decl. ¶ 49.  Patrick heard from coworkers that GTGL assured them "that the application process was a mere formality and . . .  GTGL intended to retain all KAC employees."  *Id*. ¶ 44.  But Patrick was denied an

---

[4](...continued)
indicates that GTGL did not assume any liability of the seller, *id.* ¶ 3, and has no contractual liability for any of the seller's liability relating to "termination of any employees of the Seller." *Id.* ¶ 3(d).

interview with GTGL, in contrast to all other KAC employees who received interviews.  *Id.* ¶ 50.[5]

Patrick was not hired (or re-hired) by GTGL.  Indeed, GTGL contends that "[a]t no time did Plaintiff apply for employment with GTGL."  Doc. No. 14, GTGL CSF ¶ 11.  Patrick, however, attests that "Stanwood terminated [her] employment and refused to re-hire [her] for GTGL," Doc. No. 24-1, Pl.'s Decl. ¶ 53, giving her "the excuse that GTGL was unable to hire [her] because they were downsizing."  *Id.* ¶ 54.  She declares that "[a]ll full-time KAC employees were hired by GTGL except [her], although [she] was qualified and had timely submitted [her] job application and resume."  *Id.* ¶ 52.  As support for her contention that she was qualified, Patrick points to a March 19, 2012 letter of recommendation that Stanwood wrote for Patrick -- the letter, among other praise, describes Patrick as "highly capable," "always willing to take on more," "a great self-starter," with "excellent customer service skills."  Doc. No. 24-4, Pl.'s Ex. 3. The letter states that "[i]n February of 2012, [KAC] was sold to new owners, and our workforce was downsized, so we unfortunately had to release [Patrick] from employment."  *Id.*

---

[5]  The Complaint alleges that "on or about January 30, 2012," Patrick provided Stanwood a doctor's medical clearance that allowed her to return to work on February 1, 2012.  *See* Doc. No. 1, Compl. ¶ 20.

**B.     Procedural Background**

On June 14, 2012, Patrick filed a charge of discrimination with the HCRC.  Doc. No. 14-6, GTGL Ex. D.  Patrick's charge indicated she intended her charge to be "dual filed," by checking the box stating "I want this charge filed with both the EEOC and the [HCRC]."  *Id.*  On July 29, 2013, the HCRC issued Patrick a Right to Sue letter, and on August 26, 2013, the EEOC issued a Right to Sue Letter.  Doc. No. 1, Compl. ¶¶ 8, 9.  Patrick then filed this action on November 21, 2013, Doc. No. 1, alleging the following fourteen Counts of federal and state law violations against Defendants:

> Count I -- Sexual Harassment (Title VII and HRS § 378-2) (against 3DH and GTGL);
>
> Count II -- "Hostile and/or Sexually Hostile Work Environment" (Title VII and HRS § 378-2) (against 3DH and GTGL);
>
> Count III -- Sexual Discrimination (Title VII) (against 3DH and GTGL);
>
> Count IV -- Retaliation (Title VII and HRS § 378-2) (against 3DH and GTGL);
>
> Count V -- Wrongful Discharge in Violation of Public Policy (against 3DH and GTGL);
>
> Count VI -- Sexual Assault and Battery (against all Defendants);
>
> Count VII -- Assault and Battery (against all Defendants);
>
> Count VIII -- Wrongful Imprisonment (against all Defendants);

Count IX -- Negligent Hiring, Retention and/or Supervision (against 3DH and GTGL);

Count X -- Intentional Infliction of Emotional Distress (against all Defendants);

Count XI -- Negligent Infliction of Emotional Distress (against all Defendants);

Count XII -- Negligence (against all Defendants);

Count XIII -- Gross Negligence (against all Defendants); and

Count XIV -- Willful and Wanton Misconduct (against all Defendants).

*See* Doc. No. 1, Compl. at 8 to 22.

On December 20, 2013, 3DH filed its Motion for Partial Dismissal. Doc. No. 5. On January 27, 2014, GTGL filed its Motion for Summary Judgment, Doc. No. 13, and filed a joinder in 3DH's Motion. Doc. No. 16. On February 10, 2014, 3DH filed a Statement of No Position on GTGL's Motion for Summary Judgment. Doc. No. 21. Plaintiff filed Oppositions to both Motions on February 10, 2014, Doc. Nos. 22, 23, and Replies were filed on February 14, 2014. Doc. Nos. 29, 31. (The record reflects that Lardizabal has counsel, but he has not filed positions on either Motion.) The court heard the Motions on March 3, 2014.

///

///

# III.  STANDARDS OF REVIEW

## A.      Rule 12(b)(6) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"  A Rule 12(b)(6) dismissal is proper when there is either a "'lack of a cognizable legal theory or the absence of sufficient facts alleged.'"  *UMG Recordings, Inc. v. Shelter Capital Partners, LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008)).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id*. (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient

10

allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216.  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8.  *Iqbal*, 556 U.S. at 679.

## B.    Motion for Summary Judgment

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

11

"A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56 [(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . The nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (stating that a party cannot "rest upon the mere allegations or denials of his pleading" in opposing summary judgment).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at 248). When considering the evidence on a motion for summary judgment, the

12

court must draw all reasonable inferences on behalf of the nonmoving party.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn in his favor" (citations omitted)).

## IV. <u>DISCUSSION</u>

Defendants' Motions raise several grounds for dismissal or for summary judgment as to many, but not all, of the various Counts alleged in the Complaint.  And Plaintiff has conceded or not opposed many of the arguments, agreeing to dismiss several causes of action.

3DH primarily argues that (1) an employer cannot be liable for sexual harassment or assault committed by a co-worker on a respondeat superior basis; (2) the state law retaliation claim (Count IV) is time-barred; (3) the state law claim for violation of public policy (Count V) is preempted; and (4) several other counts are duplicative.  For its part, GTGL's Motion for Summary Judgment points out that the alleged sexual harassment occurred *before* KAC was sold to GTGL (when Patrick was employed by 3DH) -- and thus because GTGL never employed Patrick or Lardizabal, GTGL cannot be liable under many of the theories Patrick alleges against both 3DH and GTGL.  The court addresses each Count in turn, considering

13

the Motions together where appropriate.

## A.    Count I -- Sexual Harassment (Title VII and HRS § 378-2)

3DH argues that Counts One and Two both allege sexual harassment

under Title VII and state law, and are therefore duplicative.  Doc. No. 5-1, 3DH

Mot. at 11-12.  GTGL has joined in 3DH's Motion.  Plaintiff does not oppose this

argument and agrees to dismiss Count One, choosing to assert any actionable

sexual harassment as encompassed in Count Two.  Doc. No. 22, Pl.'s Opp'n (3DH)

at 8.  Accordingly, Count One is dismissed with prejudice.

## B.    Count II -- Hostile/Sexually Hostile Work Environment (Title VII and HRS § 378-2)

Count Two alleges Federal and State law statutory claims for sexual

harassment against both 3DH and GTGL based on a "hostile environment" theory

(there is no "quid pro quo" harassment at issue).[6]  3DH argues that it cannot be

liable for co-worker harassment given that there is no "respondeat superior"

---

[6]  Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., prohibits sex discrimination, including sexual harassment, in employment.  *See, e.g.*, *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65-66 (1986).  Title VII encompasses liability for two distinct theories of sexual harassment -- "quid pro quo" and "hostile environment."  *See, e.g.*, *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1053-54 (9th Cir. 2007) (explaining elements of each type).  Similarly, HRS § 378-2(a)(1) prohibits an employer from discriminating "because of . . . sex."  And, generally, Hawaii courts analyzing a claim under HRS Chapter 378 may look to federal courts' interpretations of Title VII for guidance.  *See, e.g.*, *Arquero v. Hilton Hawaiian Vill. LLC*, 104 Haw. 423, 429-30, 91 P.3d 505, 511-12 (2004) ("In interpreting HRS § 378–2, we have held that federal courts' interpretations of Title VII . . . are persuasive, but not controlling.") (citations omitted).

liability for sexual harassment under Title VII and HRS § 378-2 -- that is, even if

Lardizabal sexually assaulted Plaintiff, he was only a co-worker, not a supervisor

or management-level employee with the power to control the terms or conditions

of employment.  GTGL joins in the argument, and also argues that it is entitled to

summary judgment because it never employed Lardizabal or Plaintiff, much less

employed them when the sexual assault occurred.

> ### 1.    *The Hostile Environment Factual Allegations, Assumed as True, Are Sufficient to State a Claim Against 3DH*

Generally, employers are not liable for co-worker harassment under

Title VII or HRS § 378-2.  *See, e.g.*, *Burlington Indus., Inc. v. Ellerth*, 524 U.S.

742, 765 (1998) ("An employer is subject to vicarious liability to a victimized

employee for an actionable hostile environment *created by a supervisor* with

immediate (or successively higher) authority over the employee.") (emphasis

added); *Lales v. Wholesale Motors Co.*, ___ P.3d ___, 2014 WL 560829, at *44

(Haw. Feb. 13, 2014) ("Racial or sexual harassment usually does not fall within

'the scope of employment' because it is not 'actuated, at least in part, by a purpose

to serve the master.'") (citations omitted).

But employers can be liable for their *own* failure to investigate, or to

take action or to fail to prevent harassment.  That is, employers have a

responsibility to remedy and, where possible, to prevent sexual harassment in the

workplace.  *See, e.g., Dawson v. Entek*, 630 F.3d 928, 940 (9th Cir. 2011).

Liability, however, in cases where the alleged harasser is a co-worker, is limited to

the negligent acts of the employer.  *See, e.g., Swinton v. Potomac Corp.*, 270 F.3d

794, 803 (9th Cir. 2001).  A plaintiff has the burden of proving that the employer

"knew or should have known of the harassment but did not take adequate steps to

address it."  *Id*.  For example, an employer's failure to levy any disciplinary action

against a harassing employee might render the employer liable.  *See, e.g.*,

*Yamaguchi v. U.S. Dep't of the Air Force*, 109 F.3d 1475, 1483 (9th Cir. 1997);

*see also Fuller v. City of Oakland*, 47 F.3d 1522, 1528-29 (9th Cir. 1995) ("Once

an employer knows or should know of harassment, a remedial obligation kicks in. .

. .  Title VII does not permit employers to stand idly by once they learn that sexual

harassment has occurred.  To do so amounts to a ratification of the prior

harassment."); *Arquero v. Hilton Hawaiian Vill. LLC*, 104 Haw. 423, 429, 91 P.3d

505, 511 (reiterating similar rule under HRS § 378-2).

> "When evaluating a claim of sexual harassment based on a hostile

work environment, [a court] must determine two things:  whether the plaintiff has

established that she or he was subjected to a hostile work environment, and

whether the employer is liable for the harassment that caused the environment."

*Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 966 (9th Cir. 2002) (citing

*Faragher v. City of Boca Raton*, 524 U.S. 775, 787-89 (1998) (other citation

omitted)).  "To establish that she was subjected to a hostile work environment, a

plaintiff must prove that '1) she was subjected to verbal or physical conduct of a

sexual nature, 2) this conduct was unwelcome, and 3) this conduct was sufficiently

severe or pervasive to alter the conditions of . . . employment and create an abusive

working environment.'"  *Id.* (quoting *Fuller*, 47 F.3d at 1527) (internal quotations

and citation omitted); *Nelson v. Univ. of Haw.*, 97 Haw. 376, 390-91, 38 P.3d 95,

109-110 (2001) (similar).

      Patrick alleges and 3DH does not seriously dispute (for purposes of

these Motions) that there was no investigation into the December 19, 2011

incident.  That is, the facts of the Complaint, assumed as true on the part of 3DH,

are sufficient to state a claim against 3DH for its alleged failure to take any

corrective action to investigate or address the sexual harassment/assault.  *See, e.g.,*

*Swinton*, 270 F.3d at 803; *Fuller*, 47 F.3d at 1528-29; *Arquero*, 104 Haw. at 429,

91 P.3d at 511.

      The court has considered whether the Complaint's allegations are

sufficient to state a claim under a hostile environment theory, given an apparent

"one-time" incident of sexual assault (that is, there are no allegations that

Lardizabal, or others, had assaulted or harassed KAC employees on *previous*

17

occasions).  *Compare Brooks v. City of San Mateo*, 229 F.3d 917, 924-26 (9th Cir.

2000) (holding that a "single incident" of harassment, and where followed by

immediate corrective action by the employer, was not sufficiently "severe or

pervasive" to create a hostile work environment), *with Little*, 301 F.3d at 967 ("A

single 'incident' of harassment -- and we assume arguendo that three rapes in the

course of one evening constitutes a 'single' incident -- can support a claim of

hostile work environment because the 'frequency of the discriminatory conduct' is

only one factor in the analysis.'") (citing *Harris v. Fortklift Sys., Inc.*, 510 U.S. 17,

23 (1993)).

        In this regard, this case is very similar to *Little*, which reasoned that a

"single incident" of rape could indeed be sufficiently "severe" to constitute a

sexually hostile environment that altered the terms and conditions of employment.

301 F.3d at 966-67.  *Little* reasoned that

> [r]ape is unquestionably among the most severe forms of
> sexual harassment.  Being raped by a business associate,
> while on the job, irrevocably alters the conditions of the
> victim's work environment.  It imports a profoundly
> serious level of abuse into a situation that, by law, must
> remain free of discrimination based on sex.  Being raped
> is, at minimum, an act of discrimination based on sex.

*Id.* at 967-68.  Here, the Complaint alleges a "continuing" sexual assault (and one

that resulted in an eleven-count indictment under state law) which is similar to the

18

rape considered in *Little*.  And, like *Little*, the employer is alleged to have done

nothing to investigate or carry out its remedial duty.  *See id.* at 967 (distinguishing

*Brooks* because, in contrast, the employer in *Little* failed to take immediate

corrective action); *see also Arquero*, 104 Haw. at 431 & n.11, 91 P.3d at 513 &

n.11 (holding, under state law, that the severity of conduct is analyzed separately

from the effect of the conduct on the work environment, and reiterating that "a

single severe act can be enough to establish a [hostile environment] claim")

(quoting *Nelson*, 97 Haw. at 390, 38 P.3d at 109).  The elements of a hostile

environment claim are met.

     **2.**      ***Genuine Issues of Material Fact Preclude Summary Judgment in
Favor of GTGL as to Count II***

     GTGL contends it cannot be liable under Title VII or HRS § 378-2

because it was not an "employer" of either Patrick or Lardizabal when the assault

occurred.  The court concludes, however, that it is premature to grant summary

judgment in favor of GTGL.

     First, the Complaint alleges (entirely "plausibly" for purposes of an

*Iqbal* pleading standard), and some evidence indicates, that Stanwood acted on

behalf of GTGL both prior to and after the sale of KAC to GTGL.  *See, e.g.*, Doc.

No. 24-1, Pl.'s Decl. ¶ 36.  Plaintiff also alleges and argues that Stanwood and/or

GTGL failed to investigate or remediate against potential workplace harassment at

KAC -- which was a continuing business throughout December 2011 and after February 2012.

Further, construing reasonable inferences in favor of Plaintiff, evidence indicates that Stanwood was employed by GTGL after the purchase agreement was signed on December 28, 2011, and even before the sale of KAC closed in February 2012.  As set forth above, according to Plaintiff, Stanwood "was in charge of transitioning the employees and the entire club operation from KAC to GTGL," Doc. No. 24-1, Pl.'s Decl. ¶ 37, and she remained as KAC's general manager after the sale to GTGL.  *See* Doc. No. 24-4, Pl.'s Ex. 3; Doc. No. 24-1, Pl.'s Decl. ¶ 36.  That is, "Stanwood was the 'team leader' for GTGL to work with KAC employees in transitioning to [GTGL][.]"  Doc. No. 25, Pl.'s Suppl. Decl. ¶ 34.

Thus, there is a question -- especially at this relatively early stage of litigation -- whether GTGL is alleged to have a sufficient employment relationship to have violated Title VII by failing to address sexual harassment in the KAC workplace.  *Cf. Anderson v. Pac. Mar. Ass'n*, 336 F.3d 924, 930 (9th Cir. 2003) (explaining that "for Title VII to apply, 'there must be some connection with an employment relationship,' though the 'connection . . . need not necessarily be direct.'. . . .  This might occur where a defendant subject to Title VII interferes with

an individual's employment opportunities with another employer.'") (quoting

*Lutcher v. Musicians Union Local 47*, 633 F.2d 880, 883 & n.3 (9th Cir. 1980)).

Moreover, even if GTGL is not considered to be an "employer" of, or

to not have a requisite "connection with an employment relationship" with,

Lardizabal or Plaintiff, GTGL nevertheless could have liability under a "successor

liability" doctrine. *See, e.g.*, *Bates v. Pac. Mar. Ass'n*, 744 F.2d 705, 709 (9th Cir.

1984) (explaining how a successor might have liability for employment

discrimination of a predecessor employer); *Global Horizons*, 860 F. Supp. 2d at

1186 (applying this successorship liability doctrine in Title VII context).  "The

purpose of having a theory of successor liability is to impose liability on a party

who did not take part in the violations but has knowingly inherited the legal woes

of its predecessor."  *Global Horizons*, 860 F. Supp. 2d at 1186 (citing *Golden State

Bottling Co., Inc. v. NLRB*, 414 U.S. 168, 172 n.2 (1973)).

*Bates* identified "three principal factors bearing on the appropriateness

of successor liability for employment discrimination:  (1) the continuity in

operations and work force of the successor and predecessor employers, (2) the

notice to the successor employer of its predecessor's legal obligation, and (3) the

ability of the predecessor to provide adequate relief directly."  *Id.* (quoting *Bates*).

"[T]he '[m]ost important' fact favoring continuity was that the successor 'use[d]

21

many of the same personnel.'" *Id.*

Assuming the Complaint's allegations as true (and construing evidence in favor of Plaintiff at this early summary judgment stage), the main factors of a successor liability theory are satisfied for present purposes.[7]  According to the Complaint and the declaration of Plaintiff, the business of KAC continued throughout the transition.  *See* Doc. No. 24-1, Patrick Decl. ¶¶ 37, 44; Doc. No. 24-3, Pl.'s Ex. 3.  All KAC employees (except Patrick) were re-hired.  Doc. No. 24-1, Patrick Decl. ¶ 52.  And GTGL appears to have had notice of (and detailed knowledge about) the assault -- at minimum -- through Stanwood, who was general manager of KAC both before and after the transition of ownership.[8]

---

[7]  One of the *Bates* factors -- "the ability of the predecessor to provide adequate relief directly" -- has not been fully addressed (other than Plaintiff indicating that 3DH cannot reinstate her to her position at KAC), but this does not preclude the possibility of a viable successor-liability theory at this relatively early stage of the litigation.  That is, whether or not 3DH might otherwise be able to pay damages, the record is sufficient to deny GTGL's present Motion for Partial Summary Judgment.  This current dispute does not preclude further dispositive motions by GTGL after an appropriate period for discovery.

[8]  Some clauses of the purchase agreement between 3DH and GTGL might address liability as between the seller and buyer of KAC.  *See, e.g.*, Doc. No. 14-3, GTGL Ex. A ¶¶ 3, 3(d) (indicating that GTGL did not assume any liability of the seller, and has no contractual liability for any of the seller's liability relating to "termination of any employees of the Seller").  These contractual provisions between the owners of KAC might have some applicability in whether GTGL had notice of KAC's potential liabilities, but have no effect on Title VII's protections for an employee.  *Cf. Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 51 (1974) ("Title VII's strictures are absolute and represent a congressional command that each employee be free from discriminatory practices.  Of necessity, the rights conferred can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount congressional purpose behind Title VII."); *Richardson v. Sugg*, 448 F.3d 1046, 1054 (8th Cir.

(continued...)

GTGL argues that the court should not consider a "successor liability" theory because it is not pled in the Complaint. For this proposition, it cites *Old Republic Insurance Co. v. Hans World Cargo Serv.*, 170 F.R.D. 361, 376 (S.D.N.Y. 1997) (dismissing a complaint for inadequate pleading -- with leave to amend -- against a successor corporate Defendant in a commercial case sounding in fraud, where plaintiffs argued a successor liability theory). But even if *Hans World Cargo Service* might have some applicability in the present Title VII employment context, the court faces GTGL's Motion for Summary Judgment (not a motion challenging the adequacy of the pleading) where the evidence -- construed in Plaintiff's favor -- indicates possible application of a successor liability theory. Also, the Complaint generally alleges the possibility that GTGL could be liable for acts occurring while 3DH owned KAC. *See* Doc. No. 1, Compl. ¶ 29 ("3DH and/or GTGL, by and through Stanwood and/or their other employees, representatives, and/or agents, failed, neglected, and/or refused to investigate, document, and report the December 19, 2011, sexual harassment,"). In this context, then, it would be improper to grant summary judgment in favor of GTGL based on an inadequate pleading, especially where the court would otherwise allow

---

[8](...continued)

2006) (explaining that *Alexander* "was applying a general rule -- that Title VII rights cannot be waived"). In any event, the alleged involvement of Stanwood for both corporate Defendants is sufficient, at this stage, to deny GTGL's Motion.

Plaintiff leave to file an amended complaint alleging a successor liability theory against GTGL given facts that came to light after the Complaint was filed.

Additionally, GTGL suffers no legal prejudice by any perceived lack of notice of a successor liability theory -- the litigation is in a relatively early stage, and GTGL may still file an appropriate substantive motion if it has a clear basis for asserting a lack of liability.  As the record currently stands, the court has very little evidence, one way or the other, of the circumstances of the change in ownership of KAC such as what the principals of 3DH and GTGL knew regarding the alleged sexual assault.

In short, the record is insufficient to grant summary judgment on this cause of action as to GTGL.

## C.     Count III -- Sexual Discrimination (Title VII) (against 3DH and GTGL)

Count III alleges a gender-based discrimination claim (distinct from sexual harassment).  That is, Count III appears to allege that Plaintiff was discriminated against in the terms and conditions of employment, based not on sexual harassment, but because of her female gender.  It is unclear, however, whether this theory is based on actions of Plaintiff's co-worker Lardizabal, or on actions of Plaintiff's supervisor Stanwood.  At oral argument, Plaintiff's counsel had some difficulty clearly articulating the basis for a gender discrimination claim

(distinct from a sexual harassment claim).  Counsel, however, appeared to indicate that Plaintiff may have been treated differently from others by 3DH because of her gender, or may have not been re-hired to work at KAC by GTGL because of her gender.  But, under either theory, Count III fails to state a claim.

First, to the extent Count III is based on Lardizabal's alleged sexual assault, there are no facts pled that would indicate such an assault was an incident of gender discrimination that is *distinct* from severe sexual assault/harassment by a co-worker (as analyzed above).  There is no indication of *other* incidents of gender discrimination in the workplace to create an environment hostile to females -- the suit is based on actions of Lardizibal on December 19, 2011, and the response (or lack thereof) by 3DH and/or GTGL (as well as alleged retaliation by 3DH and/or GTGL).

Second, to the extent this gender discrimination claim is based on 3DH's termination of Plaintiff, or on GTGL's failure to hire (or re-hire) Plaintiff, the Complaint fails to allege (much less demonstrate with evidence) all of the necessary elements of a prima facie case of such gender discrimination.  *See, e.g.*, *Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1123 (9th Cir. 2009) (explaining the familiar burden-shifting analysis derived from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and reiterating that a plaintiff may establish a

prima facie case of discrimination by demonstrating that she (1) belongs to a protected class; (2) was qualified for a position; (3) was subject to an adverse employment action; and (4) similarly situated individuals outside the protected class were treated more favorably).  Specifically, there are no allegations or evidence as to the fourth requirement -- that similarly situated males were treated more favorably than Plaintiff in any termination or hiring decision by either 3DH or GTGL.

The Complaint thus fails to state a claim for gender discrimination that is distinct from a sexual harassment claim already set forth in Count II.  The court thus DISMISSES Count III.  This dismissal, however, is without prejudice to Plaintiff filing a Motion for Leave to File an Amended Complaint under Federal Rule of Civil Procedure 15 if she still desires to assert a gender-based statutory discrimination claim, and if a good faith basis exists for such an allegation.

**D.    Count IV -- Retaliation (Title VII and HRS § 378-2) (against 3DH and GTGL)**

*1.    State Law Retaliation Claim*

3DH argues that an HRS § 378-2 claim is time-barred because the Complaint was not filed within ninety days of the HCRC "right to sue" letter.  *See* HRS § 368-12 ("[t]he [HCRC] may issue a notice of right to sue upon written request of the complainant.  Within ninety days after receipt of a notice of right to

26

sue, the complainant may bring a civil action under this chapter.").  Here, the

HCRC issued a notice of right to sue on July 29, 2013, but Patrick did not file a

civil action until November 21, 2013, which was 115 days after the HCRC notice

(but eighty seven days after the EEOC issued its letter).  In response, Patrick does

not oppose dismissal of Count IV under state law, Doc. No. 22, Pl.'s Opp'n (3DH)

at 8, given that equivalent relief is available under Title VII.  Accordingly, the state

law claim for retaliation in Count IV is DISMISSED with prejudice.[9]  The court

addresses Count IV's Title VII retaliation claim next.

### 2.    *Title VII Retaliation*

Title VII prohibits, among other things, retaliation against an

employee for making a charge or otherwise participating in a Title VII proceeding.

*See* 42 U.S.C. § 2000e-3(a).  To establish a prima facie case of retaliation, a

plaintiff "must demonstrate that (1) she had engaged in a protected activity; (2) the

[defendant] subjected her 'to an adverse employment action; and (3) a causal link

existed between the protected activity and the adverse employment action.'"

*Nilsson v. City of Mesa*, 503 F.3d 947, 953-54 (9th Cir. 2007) (quoting *Porter v.*

---

[9]  The EEOC issued a separate right to sue letter on August 26, 2013, and the Title VII claim is timely as measured from that date, having been filed eighty seven days after the EEOC letter.  (The parties have not raised, and thus the court need not address, whether the limitations period for the state law claim might be tolled, pending the EEOC's issuance of a right to sue letter.  *See Weaver v. A-American Storage Mgmt. Co.*, 2011 WL 97651 (D. Haw. Jan. 12, 2011)).

*Cal. Dept. of Corr.*, 419 F.3d 885, 894 (9th Cir. 2005)).  "If [Plaintiff] provides

sufficient evidence to show a prima facie case of retaliation, the burden then shifts

to the [defendant] to articulate a legitimate, non-retaliatory reason for its actions."

*Id.* (citation omitted).  "If the [defendant] sets forth such a reason, [plaintiff] bears

the ultimate burden of submitting evidence indicating that the [defendant's]

proffered reason is merely a pretext for a retaliatory motive."  *Id.* (citation

omitted).

          To establish a causal link between protected activity and an adverse

employment decision, an employee "must show by a preponderance of the

evidence that engaging in the protected activity was one of the reasons for [her]

[adverse employment action] and that but for such activity [she] would not have

been [subject to such action]."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054,

1064-65 (9th Cir. 2002) (citations and quotation marks omitted).  The timing of an

adverse employment action in relation to a report of harassment and complaint to a

supervisor can be sufficient to raise "indirect evidence that undermines the

credibility of the employer's articulated reasons."  *Noyes v. Kelly Servs.*, 488 F.3d.

1163, 1171 (9th Cir. 2007).  "In some cases, temporal proximity can by itself

constitute sufficient circumstantial evidence of retaliation for purposes of both the

prima facie case and the showing of pretext."  *Dawson*, 630 F.3d at 937 (citations

28

omitted) (determining it was sufficient that two days after reporting being harassed to his human resources officer, the employer terminated plaintiff for failure to follow call in procedures when missing a day of work).

GTGL again argues that it was not Patrick's employer, and thus cannot be liable for retaliation under Title VII.  But even so, GTGL allegedly failed to hire or even interview Plaintiff because she engaged in protected activity (even assuming the protected activity was with 3DH).  That is, GTGL could still be liable for *retaliation* under Title VII, especially given the allegations that supervisor Stanwood acted on behalf of both corporate Defendants.  *See Nilsson*, 503 F.3d at 953 n.3 ("There is no requirement that the entity charged with retaliation [(*e.g.*, GTGL)] be the same as the entity whose allegedly discriminatory practices were opposed by the charging party [(e.g., 3DH)].") (quoting EEOC Compliance Manual).[10]  Accordingly, the court DENIES GTGL's Motion as to retaliation under Title VII.  A federal statutory claim for retaliation remains as to both 3DH and GTGL.

///

///

---

[10]  Further, Stanwood allegedly told Plaintiff she was not retained at KAC by GTGL "because they were downsizing," Doc. No. 24-1, Pl.'s Decl. ¶ 54, raising a question whether such an explanation was pretext.

E.     **Count V -- Wrongful Discharge in Violation of Public Policy (against 3DH and GTGL)**

Next, 3DH argues that Count V, which alleges a state law claim for wrongful discharge in violation of public policy under *Parnar v. Americana Hotels, Inc.*, 65 Haw. 370, 652 P.2d 625 (1982) (establishing a "public policy exception" to the at-will employment doctrine), is preempted because Plaintiff otherwise has adequate remedies.  *See, e.g.*, *Ross v. Stouffer Hotel Co.*, 76 Haw. 454, 879 P.2d 1037 (1994) (holding that "it is both unnecessary and unwise to permit a judicially created cause of action . . . to be maintained where the policy sought to be vindicated is already embodied in a statute providing its own remedy for its violation."); *Hughes v. Mayoral*, 721 F. Supp. 2d 947, 962 (D. Haw. 2010) ("Plaintiff cannot state a claim for wrongful termination in violation of public policy [under *Parnar*] based on the same conduct as his Title VII and HRS § 378 claims because these statutes already provide a sufficient remedy.").

Plaintiff does not oppose dismissal of Count V as to 3DH, *see* Doc. No. 22, Pl.'s Opp'n (3DH) at 6, and the court agrees that this *Parnar* claim is preempted.[11]  Plaintiff, however, requests leave to amend Count V to assert a cause

---

[11]  Inconsistently, however, Plaintiff opposes dismissal of Count V in her Opposition to GTGL's Motion, arguing that she was wrongfully discharged.  Doc. No. 23, Pl.'s Opp'n (GTGL) at 15.  To the extent Plaintiff is somehow attempting to argue that a *Parnar* claim exists as to GTGL, but not as to 3DH, this argument fails -- a *Parnar* claim is preempted regardless of the

(continued...)

of action for violation of the Hawaii Whistleblowers' Protection Act, HRS § 378-62.  The court, however, will require Plaintiff to file a separate motion for leave to amend under Federal Rule of Civil Procedure 15.  Ordinarily, at this early stage of litigation, the court might dismiss a claim without prejudice and with leave to amend, so as to allow a plaintiff an opportunity to re-state an inadequately-pled claim.  Here, however, Plaintiff asks for leave to assert a new theory under HRS § 378-62 -- apparently not to attempt to re-state the same *Parnar* claim on clarified allegations.  Under these circumstances, "[t]he proper means of raising claims that have inadvertently not been raised in the complaint is an amended complaint, not a brief in opposition to a motion to dismiss."  *Sansom Comm. v. Lynn*, 366 F. Supp. 1271, 1278 (E.D. Pa. 1978); *see also Pollio v. MF Global, Ltd.*, 608 F. Supp. 2d 564, 568 n.1 (S.D.N.Y. 2009) (stating that "[p]arties cannot amend their pleadings through issues raised solely in their briefs") (quoting *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005)); *Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 863 (11th Cir. 2013) (reasoning that "a plaintiff may not amend her complaint through argument in a brief opposing summary judgment or one advocating summary judgment") (internal citations omitted).

---

[11](...continued)
Defendant.  *See, e.g.*, *Ross*, 76 Haw. at 464, 879 P.2d at 1047; *Hughes*, 721 F. Supp. 2d at 962.

Accordingly, the court DISMISSES Count V.  If Plaintiff desires to file an amended complaint asserting a claim under HRS § 378-62, she must file a separate motion complying with Rule 15.

**F.    Count VI -- Sexual Assault and Battery (against all Defendants); and Count VIII -- Wrongful Imprisonment (against all Defendants)**

3DH and GTGL both seek dismissal of Counts VI and VIII, which assert state law tort claims for sexual assault and battery, and wrongful imprisonment (both asserted against all Defendants).[12]  GTGL argues that it never employed Lardizabal and thus can have no tort liability for any of his acts.  In this regard, Plaintiff does not oppose GTGL's argument, and agrees that Counts VI and VIII should be dismissed as to GTGL.  *See* Doc. No. 23, Pl.'s Opp'n (GTGL) at 15.  Accordingly, Counts VI and VIII are DISMISSED with prejudice as to GTGL.

Plaintiff, however, opposes dismissal of Counts VI and VIII as to 3DH.  3DH raises a similar argument that it raised in challenging the statutory sexual harassment claims -- it cannot be liable under a respondeat superior theory for actions of a co-worker (especially where it is apparent that Lardizabal was not acting within the scope of his employment at KAC when he allegedly sexually

---

[12]  3DH also points out that Count VII, alleging a tort of assault and battery, duplicates Count VI.  Plaintiff does not oppose dismissal of Count VII, agreeing that its allegations are encompassed in Count VI.  The court therefore DISMISSES Count VII with prejudice as to all Defendants.

assaulted Plaintiff).  3DH argues that an employer can be liable for a co-worker's assault only where there is "positive misconduct" by the employer such as ratification of the co-worker's tortious conduct.  Doc. No. 29, 3DH's Reply at 3 (citing *Fretland v. Cnty. of Humboldt*, 69 Cal. App. 4th 1478, 1489-90, 82 Cal. Rptr. 2d 359, 366-67 (1999) (holding, under California law, that an employer is liable for co-worker's assault and battery only where there is "positive misconduct" by the employer such as ratification of the tortious conduct)); *see also Abraham v. S. E. Onorato Garages*, 50 Haw. 628, 635, 446 P.2d 821, 827 (1968) (rejecting an argument that an employer could be liable for an employee's torts, where the employer did not discharge the employee for three months after the employee's tort, concluding that the employer's failure to discharge immediately did not constitute ratification of the conduct).

The court agrees with 3DH.  Under the facts alleged in the Complaint, 3DH cannot be liable for Lardizabal's alleged sexual assault or "wrongful imprisonment."  First, Hawaii caselaw repeatedly holds that "in order to hold an employer liable for the consequences of an employee's tort on the ground of ratification, the act which is subject to ratification must have been done on behalf or under authority of the employer."  *Abraham*, 50 Haw. at 635, 446 P.2d at 827; *see also Costa v. Able Distribs., Inc.*, 3 Haw. App. 486, 490, 653 P.2d 101, 105

(1982) ("The employer's liability under [a] ratification theory requires that the act complained of be done on behalf of or under the authority of the employer, and that there must be clear evidence of the employer's approval of the wrongful conduct."); *Sharples v. State*, 71 Haw. 404, 406, 793 P.2d 175, 177 (1990) (same). Nothing in the Complaint could possibly indicate that Lardizabal's alleged sexual assault was done "on behalf of or under the authority of" 3DH.  *Abraham*, 50 Haw. at 635, 653 P.2d at 827.  And there is no "clear evidence of [3DH's] approval of the wrongful conduct."  *Costa*, 3 Haw. App. at 490, 653 P.2d at 105.

Stated differently, Lardizabal could not have been acting within the scope of his employment when he allegedly sexually assaulted Plaintiff.  To determine whether a employee is acting within the scope of employment, "Hawaii courts follow the Restatement (Second) of Agency § 228."  *Motelewski v. Maui Police Dept.*, 2012 WL 3780188, at *4 (D. Haw. Aug. 30, 2012) (citing *State v. Hoshijo ex rel. White*, 102 Haw. 307, 319, 76 P.3d 550, 562 (2003)).  In turn,

> [s]ection 228 of the Restatement provides that conduct of a servant is within the scope of employment if, but only if:
> > (a) it is of the kind he is employed to perform;
> > (b) it occurs substantially within the authorized time and space limits;
> > (c) it is actuated, at least in part, by a purpose to serve the master, and
> > (d) if force is intentionally used by the servant against another, the use of force is not

unexpectable by the master.

*Id.*  Applying this standard, Lardizabal was certainly not employed to sexually

assault women and could not have been acting to serve his employer.  *See id.*

(concluding that sexual assault by a police officer did not occur within the scope of

employment) (citing *Ho-Ching v. City & Cnty. of Honolulu*, 2009 WL 1227871, at

*13 (D. Haw. Apr. 29, 2009) ("[E]ven if Moniz did commit a sexual assault or

sexual harassment, it was not the conduct for which he was hired as a police office

and by no means served the interests of Defendant.")).  That is, Lardizabal's

alleged sexual assault could not have been "related to the employment enterprise"

and the employer could not have "derived any benefit" from the assault.  *See*

*Wong-Leong v. Hawaiian Indep. Refinery, Inc.*, 76 Haw. 433, 441, 879 P.2d 538,

546 (1994) ("[T]he applicable test is whether the employee's conduct was related

to the employment enterprise or if the enterprise derived any benefit from the

activity.").

Accordingly, the court also DISMISSES Counts VI and VIII as to

3DH.  To be clear, however, Counts VI and VIII remain as to Lardizabal.

///

///

///

35

## G.     Remaining Counts

GTGL also moves for summary judgment as to Count IX (Negligent

Hiring, Retention and/or Supervision); Count X (Intentional Infliction of

Emotional Distress); Count XI (Negligent Infliction of Emotional Distress); Count

XII (Negligence); Count XIII (Gross Negligence); and Count XIV (Willful and

Wanton Misconduct).  And Plaintiff has specifically conceded as to Counts IX and

XIV against GTGL.  *See* Doc. No. 23, Pl.'s Opp'n (GTGL) at 2 ("Patrick does not

oppose the Motion as to . . . Counts IX . . . and XIV.").  Thus, GTGL's Motion is

GRANTED as to Counts IX and XIV.[13]

This leaves Counts X to XIII as to GTGL.  GTGL's Motion is based

on GTGL's assertions that it had no control over KAC when Lardizabal allegedly

assaulted Plaintiff, and thus owed no duty to Plaintiff regarding an unforeseeable

danger such as Lardizabal's sexual assault.  Doc. No. 13-1, GTGL's Mot. at 11-12

(citing *Janssen v. Am. Haw. Cruises, Inc.*, 69 Haw. 31, 35, 731 P.2d 163, 166

(1987) (holding that a union that participated in the hiring of an employee who

sexually attacked a co-worker owed no duty of care to that co-worker where the

---

[13]  3DH did not move as to Counts IX, X, XI, XII, and XIII, other than arguing that the negligence-based counts are repetitive and unnecessary because the relief sought is also encompassed in the sexual harassment-based counts.  But even if these state-law counts are repetitive, they are independent causes of action (although, ultimately, Plaintiff may not obtain double recovery).  The court thus declines to dismiss these counts as repetitive, and they otherwise remain as alleged against 3DH and Lardizabal.

"sexual attack was not a reasonably foreseeable consequence of [the union's] recommending [the attacker] for employment")).  Plaintiff did not respond to GTGL's argument (although she also did not specifically concede, as she did as to other Counts).  Applying *Janssen*, GTGL indeed owed no duty to Plaintiff to prevent an unforeseeable sexual assault by someone it never employed, especially where there is nothing indicating it was foreseeable to GTGL that Lardizabal might harm a co-worker.  *Janssen*, 69 Haw. at 35, 731 P.2d at 166.  Given *Janssen* and Plaintiff's non-opposition, the court GRANTS GTGL's Motion as to Counts X, XI, XII, and XIII to the extent they are based on a breach of a duty owed by GTGL resulting from Lardizabal's actions against Plaintiff.

The Complaint, however, alleges facts (and there is now some evidence on Plaintiff's behalf, as discussed above) regarding GTGL's *subsequent* treatment of Plaintiff -- for example, GTGL allegedly failed to rehire, or even consider Plaintiff for a position, in retaliation for protected activity.  If true, and if done "outrageously," it is plausible that GTGL could be liable for infliction of emotional distress caused by its *own* actions (not Lardizabal's).

But the parties have not addressed all the elements of these theories of potential state law liability.  *See, e.g.*, *Pfeffer v. Hilton Grand Vacations Co.*, 2009 WL 37519, at *15 (D. Haw. Jan. 7, 2009) ("Under Hawaii law, termination alone is

37

not sufficient to support an IIED claim; rather, what is necessary is a showing of something outrageous about the manner or process by which the termination was accomplished."); *Doe Parents No. 1 v. State of Hawaii, Dep't of Educ*., 100 Haw. 34, 69-70, 58 P.3d 545, 580-81 (2002) ("[T]the law as it currently stands in Hawaii is that an NIED claimant must establish, incident to his or her burden of proving actual injury . . . that someone was physically injured by the defendant's conduct, be it the plaintiff himself or herself or someone else."). At this early stage of the litigation, it is premature to grant summary judgment in favor of GTGL on these causes of action.

Finally, 3DH points out that Count XIV ("Willful and Wanton Conduct and/or Reckless Disregard") is not a cause of action. Plaintiff responds that Count XIV is "a claim of remedy" through which she is seeking punitive damages. Given that concession, the court DISMISSES Count XIV as an independent claim, but recognizes that Plaintiff seeks punitive damages -- that is, this dismissal does not preclude Plaintiff from seeking punitive damages if she can otherwise prove willful or wanton conduct in reckless disregard of Plaintiff's rights. *See, e.g.*, *Television Events & Mktg., Inc. v. AMCON Distrib. Co.*, 488 F. Supp. 2d 1071, 1083 (D. Haw. 2006) (reiterating that "a claim for punitive damages is not an independent tort, but is purely incidental to a separate cause of

action," noting, however, that a claimant "may still seek punitive damages as part of their requested relief . . . when allegations of malicious conduct or 'willful and wanton conduct in reckless disregard of rights or interests' can be proven") (quoting *Ross v. Stouffer Hotel Co.*, 76 Haw. 454, 466, 879 P.2d 1037, 1049 (1994), *and Masaki v. Gen. Motors Corp.*, 71 Haw. 1, 10, 780 P.2d 566, 572 (1989)).

## V. <u>CONCLUSION</u>

For the foregoing reasons, (1) Defendant 3DH's Motion for Partial Dismissal, Doc. No. 5, and (2) Defendant GTGL's Motion for Summary Judgment, Doc. No. 13, are both GRANTED in part and DENIED in part.  To summarize,

- Count I (Sexual Harassment under Title VII and HRS § 378-2) is DISMISSED with prejudice as to both 3DH and GTGL;

- Count II (Hostile/Sexually Hostile Work Environment under Title VII and HRS § 378-2) remains as to both 3DH and GTGL;

- Count III (Sexual Discrimination under Title VII) is DISMISSED as to both 3DH and GTGL, without prejudice to Plaintiff attempting to reassert a gender-based discrimination claim by filing a Motion for Leave to File an Amended Complaint under Rule 15;

- Count IV (Retaliation under Title VII and HRS § 378-2) remains as to both 3DH and GTGL as to Title VII allegations, but is DISMISSED with prejudice as to HRS § 378-2;

- Count V (Wrongful Discharge in Violation of Public Policy) is DISMISSED as to both 3DH and GTGL, without prejudice to

Plaintiff attempting to file a claim under HRS § 378-62 (Hawaii Whistleblowers' Protection Act) by filing a Motion for Leave to File an Amended Complaint under Rule 15;

•   Count VI (Sexual Assault and Battery) is DISMISSED with prejudice as to both 3DH and GTGL, but remains as to Lardizabal;

•   Count VII (Assault and Battery) is DISMISSED with prejudice as to all Defendants;

•   Count VIII (Wrongful Imprisonment) is DISMISSED with prejudice as to both 3DH and GTGL, but remains as to Lardizabal;

•   Count IX (Negligent Hiring, Retention and/or Supervision) is DISMISSED with prejudice as to GTGL, but remains as to 3DH;

•   Count X (IIED) is DISMISSED in part as to GTGL (to the extent based on Lardizabal's actions), and remains as to 3DH and Lardizabal;

•   Count XI (NIED) is DISMISSED in part as to GTGL (to the extent based on Lardizabal's actions), and remains as to 3DH and Lardizabal;

•   Count XII (Negligence) is DISMISSED in part as to GTGL (to the extent based on Lardizabal's actions), and remains as to 3DH and Lardizabal;

•   Count XIII (Gross Negligence) is DISMISSED in part as to GTGL (to the extent based on Lardizabal's actions), and remains as to 3DH and Lardizabal; and

///

///

- Count XIV is DISMISSED, although punitive damages as a possible remedy remains as possible relief in the action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 18, 2014.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Patrick v. 3D Holdings LLC et al.*, Civ. No. 13-00638 JMS/KSC, Order Granting in Part and Denying in Part Defendants' Motions for Partial Dismissal, and for Summary Judgment, Doc. Nos. 5 & 13